[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM ARTICULATING COURT'S RULING CONTINUING CUSTODY WITH GRANDPARENTS
On December 23, 1988 the plaintiff Diana Busa filed a motion asking for an order returning to her the custody of her two minor children. Her motion was denied in a Memorandum of Decision filed January 3, 1990 and she appealed to the Appellate Court which in a decision released April 6, 1991 remanded the case to this court with direction to articulate its ruling in accord with that court's opinion.
On July 1, 1983 after an uncontested hearing, the marriage of Diana Busa and Anthony Busa, Jr. was dissolved and custody of the two children of the marriage, Michael and Dominick, granted to Diana Busa with rights of visitation in CT Page 5699 Anthony Busa, Jr. Thereafter by an agreement signed by Diana Busa on August 24, 1984, by the grandparents of the children on August 27, 1984 and by Anthony Busa, Jr. on January 22, 1985, temporary custody of the two children was given to the grandparents. The court on February 25, 1985 modified the original judgment in accord with the agreement and temporary custody was given to the grandparents with rights of reasonable visitation in Diana Busa and Anthony Busa, Jr.
By her motion Diana Busa asked that custody of the children be returned to her with the grandparents to have liberal visitation with the children, that a Family Relations study to be done in Connecticut and in South Carolina and that an attorney be appointed to represent the children. A Family Relations study was ordered and an attorney appointed for the children. The grandparents then moved to be made party defendants. Their motion was granted on April 24, 1989. A hearing was held on the motion for change in custody on November 30, December 1 and 4, 1989. An appeal was taken from this court's decision on the motion to the Appellate Court. Its decision was released on April 16, 1991. In that decision, the court noted that Section 46b-56b required the trial court to articulate whether the presumption, in a dispute as to the custody of a minor child involving a parent and a non-parent, that it is in the best interest of a child to be in the custody of the parent is properly rebutted.
The record before the Appellate Court consisted of the Judgment dated July 1, 1983, the Agreement signed in August 1984 and January 1985, the Motion to Reopen and Modify the Stipulation dated December 23, 1988, the Motion by the Grandparents to be made Party Defendants dated March 27, 1989 and the Memorandum of Decision dated January 3, 1990. The transcript of the evidence at the hearings was not provided to the Appellate Court, nor was the Family Relations Study. It is necessary, therefore, that the facts on the various relationships of the parties be set out somewhat at length.
In 1978 Diana Busa was living in South Carolina. She was 16 years old. She had been a High School dropout in the tenth grade. She met Anthony Busa, Jr. there. He was in the military service stationed in the area. He was a resident of Ansonia, Connecticut. She became pregnant by him and they decided to get married. They came to Ansonia and were married on July 27, 1978. Michael was born on December 11, 1978. Anthony Busa, Jr. was an alcoholic with a violent temper and the marriage broke down. She filed for divorce on June 17, 1982. She was pregnant at the time and Dominick was born on Nov. 18, 1982. The divorce was entered on July 1, 1983. Although Anthony Busa, Jr. was ordered to pay support for the CT Page 5700 children he never did. Diana Busa went to South Carolina for short time and then returned to live with the grandparents, Beverly Busa and Anthony Busa, Sr. She had no other place to go. She started to date Charles Felty. They decided to move to Massachusetts as he wanted to get a better job. This led to the agreement giving temporary custody of the children to the grandparents. The agreement referred to the two children and stated that: "the Plaintiff (Diana Busa) has been accepted and intends to enroll as a full time student in a college in Boston, Massachusetts and will be temporarily unable to provide for the care, custody and education of said minor children." The agreement gave temporary custody of the children to the grandparents and further stated: "Said temporary custody may extend for the period during which the plaintiff shall be enrolled as a student and may be terminated upon the motion of the Plaintiff to this Court, indicating that she is then again able to provide for the care, custody and education of said minor children."
Diana Busa went to Massachusetts with Felty. Her education consisted of one course at night, at the Bay State Business College. She and Felty lived together in Massachusetts and both had jobs. They stayed in Massachusetts for perhaps two years and then moved to South Carolina where the relationship soured and she met her present husband, Dennis Russell, a nuclear engineer in the Navy. They were married in October 1988. Her motion for change of custody of the children was filed on December 23, 1988.
The two children had been with the grandparents to the dates of the hearings. Diana Busa visited with the children on weekends when she was in Massachusetts. After she moved to South Carolina she flew back to Connecticut twice to see them and had the children with her in South Carolina for the summer in 1986 and 1987 and for 1 month in 1988.
Three weeks after Diana Busa moved to Massachusetts Anthony Busa, Sr. was involved in a bad accident. While he was at a sports stadium in Bridgeport he fell down 48 steps of the stadium and through an open window. He injured his spine in the area of his neck and as a result is permanently paralyzed below the neck. He can raise his head but can not move any other parts of his body. He requires complete and unending care for 24 hours a day. His wife Beverly naturally was upset and distraught by the situation. She asked Diana Busa to take the children back because she did not know if her husband would live or die. Diana Busa took the children on the weekend after that request but returned them in three days and refused to take them again. The grandparents then had to take care of the children. Beverly was working at CT Page 5701 Sikorsky's. Anthony Busa Sr. could do nothing for himself. Diana Busa knew the situation but made no effort to help out the grandparents at all. She testified that Anthony Busa, Jr. threatened her with harm if she took the children. The Court does not believe that testimony.
Beverly Busa testified that since 1983 Michael has known no other home but hers, that she loves the children, that it is best for the children to stay with them, that the children have been with us all their lives, that she has given them the only stability in their lives, that she has raised Dominick ever since he was 18 months old, that she did not believe it would do the children any good to live in South Carolina and that she wants custody of the two boys.
Anthony Busa was brought into court on a stretcher. He testified that he was the only father the boys have known, that his relationship with the boys was great, that he talks to them, that they watch T.V., that he plays games with them through his nurse, that they play monopoly, that he has helped the children do their schoolwork, that he tells them where to look for answers, that he tells them how to make things and where to write letters for information, that he has helped provide the only stability they have known.
A copy of the Family Relations Study is attached for easy reference. The Evaluation section of the report is important. It reads:
 "This matter concerns the custody of ten-year old Michael and six-year old Dominic Busa, the children of Diana Russell and Anthony Busa, Jr., and the grandchildren of Mr. and Mrs. Anthony Busa, Sr. Since birth, the children's primary residence has been with their paternal grandparents, who have had temporary custody since February 1985.
 The children clearly express their preference in continuing to reside with their paternal grandparents and in visiting with each parent on a consistent basis. The boys are comfortable in their present living situation and are secure knowing that their paternal grandparents have always been available to them to meet their basic needs. The boys have not always been able to rely on either of their parents in the same way.
 Dominic, who appears to have been raised almost exclusively by Mr. and Ms. Busa, Sr., has no observable educational or behavioral difficulties, and truly enjoys the relationships he shares with all of his family CT Page 5702 members and friends.
 Michael, who was exposed to problems between his parents while they were married, has exhibited some educational and behavioral problems in school. According to the information obtained from school personnel, Michael is improving in both his behavior and in his school work as a result of the weekly counseling sessions he has participated in for the past year. The paternal grandparents have been supportive in Michael's participation in counseling.
 It is the opinion of this counselor that Mr. and Mrs. Busa, Sr. have provided the necessary structure, support and guidance which have allowed their grandchildren to develop their educational and interpersonal skills. At this time, this counselor believes there are no compelling reasons to warrant a change in Michael or Dominic Busa's living situation, and that such a change could cause unnecessary adjustment problems for these two brothers."
The court finds as a fact that it would be detrimental to the children to remove them from the care given them by their grandparents. They kept the children when Diana Busa refused to take them back and have given them stability for almost their entire lives.
The court also finds as a fact that it would be detrimental to the children to permit Diana Busa to have custody of them. She has shown that her own interests came first in her life and that the children's interests had a very low priority with her. Her claim of going to be a "full time student in college in Boston" was a sham as she took only 1 course there and that was in the night school. She was interested only in having a good time for herself when she knew the daily care of the boys by the grandparents could only compound the terrible problems caused by the accident to Anthony Busa, Sr.
The presumption of Section 46b-56b that, in this custody dispute it will be to the best interest of the children to be in the custody of Diana Busa, is clearly rebutted by the evidence.
THOMAS J. O'SULLIVAN, TRIAL REFEREE.